T. H. HAYES, G. W. ATKINS AND J. L. YANCEY *v.* THE STATE.

(*Nashville.* December Term, 1928.)

Opinion filed June 21, 1929.

Chas. M. Bryan, Blan R. Maxwell and H. T. Holman, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

Plaintiffs in error were officers of Solvent Savings Bank & Trust Company of Memphis. Following the failure of the Bank in December, 1927, they were indicted, along with one P. W. Thornton, a bookkeeper of the Bank, who was granted a severance. The indictment contained six counts, but the State elected to rely on the second count, charging fraudulent breach of trust and the fifth count charging the making of false entries. After a protracted and hotly contested trial all three of plaintiffs in error were found guilty under the second count and Atkins and Yancey under the fifth count. The sentence of Hayes was fixed at not more than one year in the State prison and that of Atkins and Yancey at not more than five years under the second count; and Atkins and Yancey were sentenced to serve not more than five years under the fifth count, their terms to run concurrently.

All of the parties convicted and now appealing are members of the colored race and the record indicates that they had previously enjoyed excellent reputations. Hayes appears to have been at the time holding the office of President, although engaged primarily in the Undertaking business and not in personal charge of the Bank;

while Atkins was Cashier and Yancey Assistant Cashier. The offense to which all the counts in the indictment were directed was the alleged appropriation to the defendants' use of the property of the Bank in the sum of $21,403.35; and the charge under the fifth count was that false entries had been made, fraudulently and knowingly, with the intent to defraud the said Bank of the said sum.

The record is a large one and counsel for plaintiffs in error have presented in this Court one hundred and two assignments of error, being practically a *verbatim* reprint of their motion for a new trial, covering nearly one hundred printed pages in their brief. In addition to this counsel have presented to the court nearly two hundred pages of brief and argument. Of course it is out of the question for this Court to attempt to deal in detail with such a situation. The assignments challenge the preponderance of the evidence, features of the charge as given, rejection of numerous requests, the admission of evidence and, with many specifications, prejudicial conduct of counsel for the State and of the trial Judge.

Perhaps the most meritorious insistence of counsel for plaintiff in error is that the record fails to show (1) any intent to defraud the Bank, and, (2) any appropriation by these parties of any part of the Bank's funds to their own use. Counsel for the State quite frankly concede, while denouncing vigorously the conduct of the Bank's affairs by these parties, that the State has failed to show that the Bank was in fact denuded of any part of the sum referred to in the indictment, as a result of the manipulations and cross-entries which the record discloses.

Careful examination of the record confirms this concession. The sum described in the indictment is the amount of a certain deposit entry made on the books of

the Bank after the closing hour on the 29th of September, 1925, against which, and in effect cancelling this entry, a cross-entry was made the next morning before any loss to the Bank had accrued. As before stated, no part of this sum was in fact withdrawn from the Bank, or appropriated to the use of either of the plaintiffs in error, and we think it clear that the conviction under the second count for fraudulent breach of trust cannot stand. The conviction must rest, if at all, on the alleged falsity of the entry described, and the determinative question then arising of the intent of the parties in making this entry. Now we are satisfied that the entry made on the afternoon of September 29th was not justified, although there is an attempt to show that it was in accordance with a precedent, and was in contemplation of the delivery to the Bank of funds or securities equivalent thereto. That it was corrected the next morning by a cross-entry, when the funds and securities had not been produced, is plausibly relied on as indicating an honest purpose, that is, no intent to defraud at all. But we are convinced, upon a study of this record, that the plan and purpose was not to defraud the Bank—we think the interest of the Bank was being guarded in this transaction—but was to mislead and deceive the newly elected Treasurer of the Grand Lodge of the Knights of Pythias, colored, which position Hayes had held for some years and whose account with that institution was short. It was in an effort to satisfy the newly elected Treasurer, Allen, that Hayes brought about the making of the credit entry on his account as Treasurer of this fund with the Bank. By the making of this entry Hayes was enabled to deceive Allen, and we think it quite apparent that this was the purpose, and the whole purpose, of the parties in thus manipulating the books and handling this transaction.

The record contains much evidence of mismanagement and misconduct on the part of these plaintiffs in error in handling the affairs of the Bank and it clearly shows that Hayes was short with the Grand Lodge at this time in a large sum. Both before and after this time he unquestionably used the Bank's assets in making loans to himself which were not justified, and it is very probable that his misconduct had much to do with the ultimate failure of the Bank nearly two years and a half later than the date of the transaction complained of in this indictment. However, it is a matter of common knowledge that all of the Banks in this section of the State, including the best managed of them, suffered very great losses as the result of the tremendous deflation following the war, particularly in the years 1920, 1921 and 1922, and it is altogether likely that this institution suffered large legitimate losses. As above indicated, these parties are shown by the record to have been guilty of various irregular, and possibly criminal, manipulations of the assets of the Bank, but in the case before us we are restricted to a consideration of the specific matters described in the indictment and, as already stated, we have been unable to find that the Bank actually suffered any loss of funds as a result of the transaction in September, 1925, touching this sum of $21,403.35; we think the evidence clearly preponderates against the conclusion that the parties had any intention at the time of defrauding the *Bank* of any sum. Their conduct was, of course, reprehensible in the extreme, but this misconduct was directed against Allen and not against the Bank.

It appears that some days later the Bank entered into a contract with Allen by which the Bank recognized a claim in a sum equal to an amount which should have

been to the credit of Hayes and turned over to Allen in this Bank, and this sum agreed upon was largely in excess of the credit at that time standing on the books in favor of Allen. This contract provided for the payment to Allen of the sum recited, partly in cash and with fixed deferred payments. The evidence seems to indicate that Hayes made good to the Bank the sums which the Bank from time to time paid to Allen, but whether or not this is strictly so, and conceding that the Bank suffered loss as the result of this contract, we are unable to connect up the false entries complained of in the indictment with any loss resulting to the Bank under the contract. Certainly at the time the contract was made the Bank's books did not show credit in favor of Allen in any sum in excess of that which was correct.

Having reached the conclusion already indicated on the facts of the case, we find it unnecessary to deal in detail with other errors assigned. But since the case is remanded and further prosecution of these parties based upon their handling of this Bank's funds may arise, we think it proper to say generally that counsel for the State were permitted to take too wide a range in the presentation of their proof on the trial of this case. We think concise and orderly procedure would have been better conserved and prejudice avoided by confining the proof to matters more directly bearing upon the issues involved under the indictment. This general observation is a response to the substance of many of the complaints of counsel for plaintiffs in error. While perhaps the charge might well have contained language more directly limiting the attention of the jury to the specific offenses charged, we think the charge as a whole is free from reversible error.

■ The indictment herein was for violation of the statute brought forward in Shannon's Code as section 6577. We do not find this statute to have been repealed by the general banking Act of 1913. Section 40 of that act deals with omissions in the making of entries, acts of non-feasance, but does not purport to forbid, or provide punishment for, the positive crime of making false entries with fraudulent intent, acts of mis-feasance. The effect is to leave Section 6577 in force. We have recently considered the repeal of a criminal statute by the enactment of a later statute purporting to cover the entire subject, holding this to be the general rule, even though material provisions of the earlier law are omitted. *Haley* v. *State*, 156 Tenn., 85, and authorities cited.

However, in order to have this repeal by implication effect, the subject-matter, that is, the offense defined, must be the same in both acts. Here as above shown the offenses dealt with are essentially different.

Loss to the Bank being of the essence of the offense under the second count, and intent to defraud the Bank under the fifth count, and neither being established, the judgment is reversed and the case remanded.