J. WILBUR DICKSON AND J. D. REAGOR *v.* THE STATE.

*(Jackson,* April Term, 1933.)

Opinion filed June 17, 1933.

W. R. LANDRUM and ED. SMITH, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The plaintiffs in error, Dickson and Reagor, have appealed from a judgment rendered upon a conviction for fraudulently making a false entry upon the books and records of their employer, The Home Exchange Bank, of Rutherford, Tennessee.

The false entry described in the indictment records the deposit account of W. E. Dunlap, trustee, as overdrawn in the sum of $21.89, on May 24, 1932, when in fact the account was entitled to a credit of $11,034.39. The indictment charges that this false record was made by the plaintiffs in error with intent to defraud the bank.

Dickson was the cashier, and Reagor the assistant cashier of the bank. From January 1, 1932, they were the only employes. During a part of 1931 one Swink was employed in the bank, but there is no evidence that he

302

had anything to do with the bank's books and records, or any control over them.

No evidence was offered by the plaintiffs in error in their own behalf, and their assignments of error are rested upon an alleged failure of the evidence of the State to establish their guilt of the offense charged, as well as upon an alleged error in the charge and in the admission of evidence offered by the State.

The account of W. E. Dunlap, trustee, was opened in September, 1930. Monthly "reconcilement sheets" were mailed to Dunlap from that date until the closing of the bank in June, 1932. In each instance the statement mailed to Dunlap corresponded exactly with the records of his office. In December, 1930, the ledger record of the bank gave Dunlap credit for $2527.20 less than the "reconcilement sheet" mailed to him. This discrepancy steadily increased, until in February, 1932, it amounted to $11,056.28. This final discrepancy was carried forward until it was included in the ledger entry of May 24, 1932, as charged in the indictment.

The bank was placed in the custody of the State Superintendent of Banks for liquidation in June, 1932. An audit then disclosed a shortage in assets to the extent of $34,215.45.

Evidence was offered that similar manipulation had been made in the deposit accounts of eight other customers of the bank, dating back as far as 1925 and continuing until the end of the bank's course. In several instances it was shown that the pass book of the depositor had been balanced by one of the plaintiffs in error so as to show the correct balance, while the ledger sheet in the bank showed a very much smaller credit. In other instances, time deposit slips were issued and signed by

Dickson, of which no record was made on the books of the bank.

Mrs. Horner, in whose account discrepancies began in 1925 and steadily increased until December, 1930, when the larger account of Dunlap, trustee, offered a better field for manipulation, testified that all the entries in her pass book were made by the plaintiffs in error, one of them attending to her business on each of her visits to the bank. A. M. Tate gave testimony to the same effect.

Since the records of the bank did not recite the facts, the entry of the true balance on these pass books tends strongly to charge the plaintiffs in error with knowledge of the falsity of the bank's records, and with keeping a private record of the discrepancies.

Two of the accounts in which false entries were made were accounts of the City of Rutherford, of which Dickson was recorder, and Reagor treasurer.

The account of the city bond interest fund recited a false withdrawal of $2,000 on May 1, 1929; and on the same date Dickson's personal account was credited with $1900, and Reagor's with $100. On January 15, 1929, a false debit of $400 was made against the city waterworks' deposit, and the same amount credited to Reagor's personal account.

Upon the closing of the bank, depositor John Norman reproached Dickson for discrepancies in the account of himself and his minor son. Dickson made no denial of his personal responsibility therefor, and offered to sell Norman a farm and to accept his true balance in the bank as payment *pro tanto*.

It is impossible to conclude from the evidence that the books and records of the bank could have been so ex-

tensively manipulated, over so long a time, without the active participation and guilty knowledge of both plaintiffs in error. They were, so far as this record shows, in exclusive custody and control of the books. We think it is demonstrated that they had pursued a joint and common plan of looting the bank, making false entries of debits in the accounts of depositors, and withholding entries of deposits, in order to balance the books of the bank and to conceal their abstractions of cash. It is obvious that they kept records of these false entries, so that true balances might be given on the pass books of the depositors, and on the reconcilement sheets mailed to Dunlap. In the absence of any evidence to the contrary, the jury and trial judge were abundantly justified in making these inferences of fact from the evidence above recounted.

It therefore appears to us that the false entry described in the indictment was made by one of the plaintiffs in error, pursuant to an established and long followed practice of defrauding the bank by such artifice and scheme, actively participated in by both of them. The making of the false entry was therefore the act of both of them, and both are properly charged therewith.

It is contended for the plaintiffs in error that the conviction cannot be sustained because the false entry charged in the indictment was not an original record of a transaction then occurring by which the bank was deprived of its property, but was a mere carrying forward of a false entry previously made. For this proposition plaintiffs in error cite *Hayes* v. *State,* 159 Tenn., 314, 18 S. W. (2d) 1.

The offense charged is defined by the Code, section 10961, and is committed by an officer, agent, employe or

clerk of a corporation or person who makes false entries in the books or records of his employer, "with intent to defraud his employer, or any person whomsoever."

The case of *Hayes* v. *State, supra,* construes this section of the Code no further than to hold an intent to defraud of the essence of the offense. The import of the final paragraph of the opinion is that actual loss by the employer is not essential to the commission or proof of the crime. The conviction in that case was reversed on proof that the false entry in issue was made in order that Hayes might restore funds, deposited by him as treasurer of a lodge, which he had wrongfully converted to his own use, and by restoration avoid disclosure of his wrongdoing to his successor in office. The indictment charged an intent to defraud the bank, and no such intent was shown.

In the case before us, the false entry was made in order that the books of the bank might be made to show a false balance, to conceal previous thefts or embezzlements from the owners and depositors of the bank. Such concealment would have the direct effect of preventing the bank from taking any steps to recover its property, or to remove its unfaithful officers, and was so intended. If the thefts or embezzlements were accomplished by the physical abstraction of currency or specie, a contemporaneous false entry only effected a concealment of the transaction, by making the books balance. We can see no substance in the argument that a subsequent false entry was not equally in wilful fraud of the rights of the employer bank, and that is sufficient to meet the definition of the crime.

It is further contended that proof of similar false

entries in the accounts of other customers was not competent in proof of the offense charged.

We think all such evidence competent, as tending directly to charge both plaintiffs in error with knowledge of the entry in question, and with joint intent thereby to defraud the bank. This evidence tended to establish the manipulation of books and records, under the custody and control of plaintiffs in error, in order to aid and conceal a persistent and continued abstraction of the funds of the bank. The multiplication of instances of such artifice lessened proportionately the possibility that either of the plaintiffs in error could have been ignorant or guiltless of the scheme, in the execution of which the particular entry in issue was made. We have many cases which sustain the rulings of the trial judge. Those cited are peculiarly convincing and in point: *Defrese* v. *State,* 50 Tenn. (3 Heiskell), 53, 62-64; *Sartin* v. *State,* 75 Tenn. (7 Lea), 679; *Links* v. *State,* 81 Tenn. (13 Lea), 701; *Rafferty* v. *State,* 91 Tenn. (7 Pickle), 655, 16 S. W., 728.

The rulings made herein express our dissent from each of the assignments of error made in support of the appeal, save one, and it is therefore unnecessary that we treat them in order. The fourth assignment is that the trial judge was in error in failing to define, in his charge to the jury, the meaning of the intent to defraud which is essential to the commission of the offense of making false entries. The statute does not define or limit the phrase, and we doubt whether a definition could be given which would clarify its meaning, without improperly limiting its scope. It is easier to apply a rule requiring proof of fraudulent intent than to define it. We have ruled herein that the intention to conceal previous peculations from the employer was an intent to defraud, in the

making of the entry in issue. An express statement to that effect in the charge would not have aided the plaintiffs in error.

We find no error on the record, and the judgment is affirmed.