HART *v*. PIERCE.

ARMITAGE *v*. BRANDON.

(*Nashville*, December Term, 1935.)

Opinion filed Dec. 16, 1935.

412

CONWAY MAUPIN and SUSONG & PARVIN, all of Greene-
ville, for appellant.

McSWEEN, SHEPHERD & HURD, of Newport, and LEON E.
EASTERLY and J. W. KILGO, both of Greeneville, for ap-
pellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the
Court.

Pierce filed the original bill herein on the 18th of
February, 1935, alleging that he was the duly elected and
qualified superintendent of Greene county schools "now
in charge of said office;" that "he is in said office and
is occupying the functions and duties of the County
Superintendent of Schools;" that "the defendant K. C.
Hart is now attempting to interfere with the duties of
complainant," the books and records, etc. It was shown
that the defendant had been the holder of the office, but
that his term had "long since expired and he has no
claim of any kind or character upon said office." Details
of a prolonged filibuster on the part of a number of the
members of the Greene county court were set forth, and
the election of complainant was shown, following the
passage by the Legislature, on February 5th, of an act
changing the former county court quorum requirement of

three-fifths of the justices to a majority thereof. Acts 1935, chapter 10. An injunction was prayed for and granted, "restraining and inhibiting the defendant from interfering with the quiet and peaceful enjoyment of possession of the office of the County Superintendent and enjoining said defendant from interfering in any way with the operation of said office, or from interfering with the records, books and other matters pertaining to the office."

Hart responded first with a demurrer, followed by an answer, and he also filed a cross-bill. In these pleadings he denied that Pierce was in actual possession of the office when his bill was filed, and insisted that an injunction did not lie to aid the claims of complainant in this alleged election contest; also challenged the election of Pierce because by the county court with less than the required three-fifths of the members present, and also challenged the eligibility of Pierce as the holder of a superintendent's certificate which had expired and become *functus officio*. He claimed the office as a hold-over.

A demurrer to the cross-bill was filed by Pierce. The chancellor overruled the demurrer to the original bill, and sustained the demurrer to the cross-bill, declined to dissolve the injunction issued under the original bill, and refused an injunction sought by the cross-bill which he dismissed. Hart was granted an appeal.

It is conceded that much of the matter set forth in the pleadings is irrelevant to the determinative issues on this appeal, and detail recitals are omitted from this opinion, other than as they may prove pertinent to our discussion of the decisive issues presented.

The validity of the claim of Pierce to the office is challenged on the ground (1) that less than the legally re-

quired three-fifths of the justices of the county were present at the special session at which the election was held; and (2) that the superintendent's certificate issued to Pierce in 1914 had become *functus officio*.

Pierce insists that by virtue of the enactment by the Legislature of House Bill No. 300, passed February 5, 1935, a majority only was requisite at the time of his election, February 18, 1935. This bill, with its caption (now chapter 10, Acts 1935) is as follows:

"An Act to amend the Code of Tennessee, Sections 10199 and 10218, which sections relate to the organization and powers of Quarterly County Courts, so as to change the requirements for a quorum in Quarterly County Courts and to require a majority of all the Justices to elect county officials and to transact other business coming before the Quarterly County Court.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the Code of Tennessee, Section 10199, be and the same is hereby amended by striking out said section and providing in lieu thereof the following:

" 'A majority of the Justices of each County shall constitute a quorum for the transaction of all business by the Quarterly County Courts in regular or special sessions.'

"Sec. 2. Be it further enacted, That the Code of Tennessee, Section 10218, be and the same is hereby amended by striking out said section and providing in lieu thereof the following:

" 'A majority of all the Justices constituting the Quarterly County Court, and not merely a majority of the quorum, shall be required to elect county officials required by law to be elected by the Quarterly County Court, to fix salaries, to appropriate money and to transact all

other business coming before the Quarterly County Court in regular or special sessions.'

"Sec. 3. Be it further enacted, That this Act shall take effect from and after its passage, the public welfare requiring same.

"Passed February 5, 1935."

As bearing on the intent of the Legislature in the passage of this amendatory act, it is significant to note (1) that the caption expressly includes the election of county officials in the business which may be transacted by a majority of all the justices; (2) that whereas Code, section 10199, formerly read, "Quorum.—Three-fifths of the justices of each county shall constitute a quorum for the transaction of the business of the quarterly court," the amended section now reads (section 1), "A majority of the Justices of each County shall constitute a quorum for the transaction of *all* business by the quarterly County Courts *in regular or special sessions*" (Italics ours); and (3) that whereas Code, section 10218, fixed the required quorum only "to levy a tax or to appropriate public money," the amended section expressly includes within the quorum the election of county officials, fixing of salaries, appropriation of money, and the transaction of "all other business coming before the Quarterly County Court in regular or special sessions." Acts 1935, chapter 10, section 2.

The brief for appellant, however, points to Code, section 10201, subheaded, "Election of officers and filling vacancies," and it is argued that it is this section which applies to and controls the election held in this case, that it was not amended, but remains in force, and that it provides that "three-fifths of all the justices of the county shall be necessary to constitute a quorum;" that

this requirement not having been complied with, the election of Pierce was a nullity. This is the dominant issue presented on this record. This section 10201 reads as follows:

"Should any office be required to be filled, or a vacancy occur in any office required to be filled, by the county court, it shall be the duty of the clerk, or if there be no clerk, his deputy, and if there be no clerk or deputy, of the acting chairman, to give at least ten days' notice to every justice of the peace of his county to assemble at the courthouse of his county in order to fill such office or vacancy, and in filling same, all of the justices of the county shall be entitled to attend and draw compensation, but shall not draw same for more than one day; and three-fifths of all the justices of the county shall be necessary to constitute a quorum."

 It will be seen that this section deals with vacancies occurring in any office and special sessions of the court for the filling of "such office or vacancy." And it requires the presence of three-fifths of all justices at such special meetings, just as was required for the transaction of business generally by Code, section 10199. Now, but for the express inclusion, in both of the sections as amended by the new act of the language "regular *or special sessions,*" and, also, the express inclusion, consistently with the caption recital, in section 2 of the new act, amending Code, section 10218, of this language, "A majority of all the Justices . . . shall be required to *elect county officials* required by law to be elected by the Quarterly County Court," there would be plausibility in the insistence that special session elections are still governed by section 10201 and require a three-fifths attendance as heretofore. But we think it has been made

too clear for question that it was the purpose of the Legislature in passing chapter 10 of the Acts of 1935 to change the law applicable to such special session elections so as to require but a majority to constitute a quorum. The legislative intent controls. *Haley* v. *State*, 156 Tenn., 85, 299 S. W., 799. A repeal by implication is clearly indicated, since an irreconcilable repugnance is apparent. While, as insisted, repeal by implication is not favored, our many cases so announcing all agree that a later statute will operate as a repeal of an earlier statute, if the repugnance and conflict between them is such that they cannot stand together. See, among others, *Frazier* v. *East Tennessee, V. & G. Ry. Co.*, 88 Tenn., 138, 140, 12 S. W., 537; *Hunter* v. *Memphis*, 93 Tenn., 571, 572, 26 S. W., 828; *Southern Const. Co.* v. *Halliburton*, 149 Tenn., 319, 258 S. W., 409.

2. Conceding, but not deciding, that the eligibility of Pierce to the office may be properly challenged on the ground alleged by cross-bill in this chancery cause, and that this court will assume to pass on the present sufficiency of the certificate which he holds, a matter primarily within the general jurisdiction of the state board of education [see the recent case of *State ex rel.* v. *Dodson*, 169 Tenn., 178, 83 S. W. (2d), 558], we are not prepared to hold Pierce disqualified on the grounds alleged. It appears that he was examined and a certificate issued to him in 1914; that he actively served under it for many years, and that, while he was not engaged in the work of superintendent for some years prior to his last election, his certificate had never been surrendered or recalled. It was outstanding with the to be presumed assent of the state board. It was subject to no time limitation in terms. It is pointed out that the law in force when

his certificate was issued provided that those "examined under the regulations of the State Board of Education, and having attained" the specified average "shall be exempt from said examination so long as they continue in the public school work." The argument is that a discontinuance in the public school work *ipso facto* voided the certificate. This is more than the language relied on imports. It provides merely that those who have been examined and issued certificates "shall be exempt from" further examination so long as they continue in the public school work. We find no limitation here expressed upon the life of the certificate. The limitation is on the right of the state board to exact further examination. The most that can be said is that power is reserved in the state board of education to re-examine a certificate holder who has discontinued work in the public schools, with the consequent power to recall the certificate if the examination proves unsatisfactory.

Moreover, the provision in the uniform state school law now in effect, chapter 115, Acts 1925, with reference to the qualifications of county superintendents, reads as follows:

"The County Superintendent shall be a person of literary attainment and experience in the art of teaching and school administration, and shall have a certificate of qualification issued by the State Board of Education. . . . Provided all County Superintendents' certificates outstanding at the time of the passage of this Act shall be valid for the time and purpose for which they were issued, unless revoked for misconduct, inefficiency or neglect of duty." Section 6.

When this provision was passed, Pierce's certificate was "outstanding," and had been for thirteen years, and

it will be seen that it is provided that outstanding certificates "shall be valid for the time and purpose for which they were issued, *unless revoked* for misconduct, inefficiency or neglect of duty." (Italics ours.) This was an express confirmation or ratification of this outstanding certificate, and a projection of its validity into the future without time limit, since it contained none, subject alone to revocation for the causes enumerated. And it may be observed that the Legislature was careful to reserve to the state board the power to protect the schools from "inefficiency" which presumably might result from a long abandonment of school work; the only possible basis for complaint of eligibility made here, on the merits.

Two questions of procedure are presented. Neither are of importance to the parties, in view of the disposition made of the cause on the merits.

1. The motion to dismiss the appeal because premature is overruled. The practical effect of the action of the chancellor as a whole was a final disposition of the cause in that court. He dismissed the cross-bill, and he was within his discretionary powers in granting an appeal from his order overruling the demurrer to the original bill.

2. As framed, the original bill did not present an election contest, and did not seek by injunction process to oust Hart from the office and place the complainant therein. We think it may well be distinguished from *State ex rel.* v. *Grindstaff*, 144 Tenn., 554, 560, 234 S. W., 510, relied on by the demurrant to the original bill. There is no charge of a contest between complainant and defendant over the office. The bill charged that the complainant was in possession of the office, discharging its duties,

and was being interfered with by the defendant. On the face of the bill we think a case for an injunction was stated. "An injunction will be granted at the instance of an incumbent of office to restrain a claimant for the office from interfering therewith," etc. *State ex rel.* v. *Bratton*, 148 Tenn., 174, page 183, 253 S. W., 705, 707. In the instant case, complainant alleged that he was an incumbent and that the defendant was interfering, although not even claiming the office. It is not intended hereby to relax the rule laid down in the Grindstaff Case, and, since followed, that "an injunction will not be granted to prevent a party from exercising a public office pending proceedings to determine the right thereto." And, as there said, "we do not think a sound public policy would permit such use of the writ of injunction in suits to try the title to public office."

The companion case of *Oda Armitage et al.* v. *A. R. Brandon et al.*, is ruled by the opinion herein; the complainants in that case having been elected at the same special session of the quarterly county court of Greene county at which Pierce was elected superintendent of schools, a like number of justices being present. The decrees in both cases will be affirmed.