Jack Mowery, Plaintiff in Error,

*v.*

State, Defendant in Error.

352 S. W. 2d 435.

(*Knoxville*, September Term, 1961.)

Opinion filed December 8, 1961.

Billy R. Ridenour, Sweetwater, for plaintiff in error.

Lyle Reid, Assistant Attorney General, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

The plaintiff in error, defendant, was indicted for armed robbery, tried and convicted and sentenced to serve ten years in the State Penitentiary. The verdict of the jury was approved by the trial court and the defendant has now appealed to this Court and assigned certain errors, including one to the effect that there is no material evidence to support the verdict and that the evidence preponderates against the verdict and further that the defendant was indicted, tried and convicted under the armed robbery statute being Sec. 39-3901 T.C.A. when the indictment and prosecution should have been under Sec. 2-2201 T.C.A., or Sec. 39-4207 T.C.A. These sections of the Code will be referred to hereinafter.

Four witnesses for the State appeared and testified that an election was being held on August 4, 1960, and that three of them were officials of such election. Sometime between the hours of 2:45 o'clock and 4:00 o'clock P.M. two men armed with pistols entered the Ho Precinct of Monroe County where the election was being held and by threatening to shoot the election officials if they interfered, took from their possession and against their will the ballot box containing the ballots of voters and voter registration books. The testimony is to the effect that the defendant Mowery was the person who took the ballot

box at the point of a pistol and that during the commission of the offense he threatened to blow out the brains of one or more of the election officials unless they complied with his orders and got over against the wall. The defendant testified to an alibi and he was supported in this defense by several witnesses among them being a constable by the name of Cochran and several other witnesses whose testimony it will not be necessary to detail in this opinion. It is sufficient to say that the jury found beyond a reasonable doubt that the defendant was guilty of armed robbery in violation of Sec. 39-3901 T.C.A. as charged in the indictment, the pertinent part of said indictment being that:

"Jack Mowery did on the 4th day of August, 1960, with force and arms, in the County of Monroe aforesaid, then and there, unlawfully, feloniously and forcibly did take by force and violence, accomplished by the use of a deadly weapon, to-wit: a pistol, from the person of A. M. Stakley, the office and Bernard Caughron, Robert J. Dailey and Riley Waton, the judges of the Ho voting precinct of Monroe County, Tennessee and from their custody, and against their will, one ballot box, lock and Registration Book of a value of Ten ($10.00) Dollars, which ballot box, lock and registration book were in the custody and control of the said A. M. Stakley, Bernard Caughron, Robert J. Dailey and Riley Watson at the said time and place."

Sec. 39-3901 T.C.A. under which section this defendant was indicted, tried and convicted provides as follows:

"Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear. Every per-

son convicted of the crime of robbery shall be imprisoned in the penitentiary not less than five (5) nor more than fifteen (15) years; provided, that if the robbery be accomplished by the use of a deadly weapon the punishment shall be death by electrocution, or the jury may commute the punishment to imprisonment for life or for any period of time not less than ten (10) years.''

Therefore, the defendant was tried under a section of the Code of Tennessee which allows the jury, and did allow the jury in this case, to inflict the death penalty by electrocution. As a matter of fact, that is the penalty provided for in said section with the proviso that the jury may commute the punishment to imprisonment for life or for any period of time not less than ten years.

There is another section of the Code which provides for punishment for breaking up an election, the same being Sec. 2-2201 T.C.A., as follows:

''If any person by force or violence break up or attempt to break up any legalized political convention, primary or final election by assaulting the officers thereof, or by destroying or carrying off the ballot box, or by the use of other forcible or violent means to prevent a nomination being fairly made, or election from being fairly and legally conducted, he shall be guilty of a misdemeanor.''

There is another section of the Code, being Sec. 39-4207 which, at first blush, might also apply to the facts of the case at bar, said Code section being as follows:

''Any person who shall feloniously steal or take by robbery, any writ, process, or public record; any bond,

promissory note, bill of exchange, order, or certificate; any book of accounts respecting goods, money or other things; any deed or contract in force; any receipt, release, or defeasance; any instrument of writing whereby any demand, right, or obligation is created, ascertained, increased, extinguished, or diminished; or any other valuable paper writing, shall be punished by imprisonment in the penitentiary not less than three (3) years nor more than fifteen (15) years.''

There is another section being Sec. 39-1942, which provides:

''Any person who takes or destroys any of the articles embraced in sec. 39-4207, with the intent to injure or defraud, shall be punished as if guilty of larceny.''

In the case of *State v. Lewis,* 198 Tenn. 91, 278 S.W.2d 81, the Court in dealing with two statutes prohibiting the same wrong and prescribing different degrees of punishment which is the exact situation we have in this case, i. e., the armed robbery statute provides for punishment by death and the statute relating to breaking up elections prescribes the penalty as a misdemeanor, the Court said:

''Two statutes prohibiting the same wrong and prescribing different degrees of punishment cannot exist at same time.''

The legislative body of our government has anticipated that such a conflict in our statutes might arise and in order to provide for such a contingency and to clarify such a situation, it has enacted Sec. 1-303 T.C.A. as follows:

''If provisions of different titles or chapters of the Code appear to contravene each other, the provisions

of each title or chapter shall prevail as to all matters and questions growing out of the subject-matter of that title or chapter.''

In the case of *Haley v. State,* 156 Tenn. 85, 87, 299 S.W. 799, 800, the indictment charged that the defendant drew a check on a named bank for $10.00 and procured J. S. Hall's Sons to cash same. Since he had no account at such bank, said check was protested for nonpayment. In the second count of the indictment, the defendant was charged with procuring $5.00 in the same manner from Nu-Way Dry Cleaning Company. The defendant, in that case, was indicted on two counts predicated upon procuring money under the False Pretense Statute. The Court held that Ch. 178, Acts of 1915, covered the entire subject-matter of fraudulently obtaining money or other property by means of a check which was not paid and that said Act superseded and repealed so much of the former Act as deals with that subject. In other words, the bad check statute of 1915, together with the penal provisions cover the entire subject-matter of obtaining money by means of a worthless check and the Court, speaking through Mr. Justice McKinney, stated:

''No principle of law is better settled than that a statute purporting to cover an entire subject repeals all former statutes upon the same subject, either with or without a repealing clause, and notwithstanding it may omit material provisions of the earlier statutes. *Poe v. State,* 85 Tenn. 495 3 S.W. 658; *Terrell v. State,* 86 Tenn. 523, 8 S.W. 212; *Rodemer v. Mitchell,* 90 Tenn. 65, 15 S.W. 1067; *State v. Butcher,* 93 Tenn. 679, 28 S.W. 296; *Chattanooga v. Neeley,* 97 Tenn. 527, 37 S.W. 281; *Maxwell v. Stuart,* 99 Tenn. 409, 42 S.W. 34;

*Zickler v. Union Bank & Trust Co.,* 104 Tenn. 277, 57
S.W. 341; *Erwin v. State,* 116 Tenn. 71, 93 S.W. 73;
*Malone v. Williams,* 118 Tenn. 390, 103 S.W. 798, 121
Am. St.Rep. 1002; *Balden v. State,* 122 Tenn. 704, 127
S.W. 134; *Stonega Coke & Coal Co. v. Southern Steel
Co.,* 123 Tenn. 428, 131 S.W. 988, 31 L.R.A. (N.S.) 278;
*Hurt v. Y. & M. V. R. Co.,* 140 Tenn. 623, 205 S.W. 437;
*Hunter v. Harrison,* 154 Tenn. 590, 288 S.W. 355.

\*    \*    \*    \*    \*    \*

"The two acts [the False Pretense Statute and the
Bad Check Statute] are therefore repugnant, and the
former must give way to the latter. *There cannot exist
at the same time two statutes prohibiting the same
wrong where they prescribe different degrees of pun-
ishment.*" (Emphasis supplied)

In the case of *State ex rel. v. Safley,* 172 Tenn. 385, 112
S.W.2d 831, 833, the Court said:

"A special provision in a statute will control a gen-
eral provision which would otherwise include that men-
tioned in the particular provision."

In the case of *Burnett v. Maloney,* 97 Tenn. 697, 37
S.W. 689, 34 L.R.A. 541, the Court said:

"A later general law does not abrogate an earlier
special one by mere implication. It is an established
rule in the construction of statutes that a subsequent
Act treating a subject in general terms, and not ex-
pressly interdicting the provisions of a prior special
statute, is not to be considered as intended to affect the
more particular and specific provisions of the earlier
Act, unless it is absolutely necessary to so construe it
in order to give its words any meaning at all."

This rule is founded upon or expressed by the maxim, Generalia specialibus non derogant, i. e., general words do not derogate from special.

Again, in the case of *State v. Safley,* supra, the Court held [172 Tenn. 385, 112 S.W.2d 833] :

"Where there is a general provision applicable to a multitude of subjects, and also a provision which is particular and applicable to one of these subjects, and inconsistent with the general provision, it does not necessarily follow that they are so inconsistent that they both cannot stand. The special provision will be deemed an exception, and the general provision will be construed to operate on all the subjects introduced therein except the particular one which is the subject of the special provision."

In the case of *Atlas Powder Company v. Leister,* 197 Tenn. 491, 274 S.W.2d 364, 365, Mr. Justice Burnett in rendering the opinion for a unanimous Court, referred to apparent conflicts of the Code, one relating to "the practice of the Supreme Court" as set out in Code Sec. 10639.1 which was general in nature, and Code Sec. 6885 which was special in nature in that it provided a method to be followed by the Supreme Court in the hearing of Appeals in Workmen's Compensation cases. This section of the Workmen's Compensation Act was a part of the subject-matter of the entire Act. In the course of disposing of this matter, Mr. Justice Burnett stated the Court's approval of the holding in the case of *Woodroof v. City of Nashville,* 183 Tenn. 483, 192 S.W. 2d 1013.

The history of the enactment of the legislation which appears now as Sec. 2-2201 T.C.A., supra, is that the

General Assembly of the State of Tennessee in the year 1799, by Ch. 17, passed an Act entitled ''An Act to preserve order in conducting elections.'' This statute was passed on October 26, 1799, and provides in toto as follows:

''Be it enacted by the General Assembly of the State of Tennessee, That if any person or persons shall by force or violence break up any election, by assaulting the officers thereof, depriving them of the ballot box, or using other forcible or violent means to prevent an election from being fairly and legally conducted, such person or persons, his or their aiders and abettors shall be adjudged guilty of a misdemeanor, and upon conviction, shall suffer three months confinement in jail, there to remain without bail or mainprize, and until he pays such fine as the court before whom such conviction is made shall judge proper; provided it shall not exceed fifty dollars, and all costs and charges.''

With slight change this provision relating to penalties for interfering with elections was carried forward in the Code of 1858 as Section 4901, prepared and edited by Meigs and Cooper, which provides:

''If any person by force or violence break up any election, by assaulting the officers thereof, or the electors, or by destroying or carrying off the ballot-box, or using other forcible or violent means to prevent an election from being fairly and legally conducted, he shall be imprisoned in the county jail not less than three months, and be fined.''

The Code of 1932 made a slight change and modification in this statute by including also a primary nomina-

tion and convention in addition to an election and stating the penalty to be a misdemeanor. Sec. 11317 of the Code of 1932 provides:

"If any person by force or violence break up or attempt to break up any legalized political convention, primary or final election, by assaulting the officers thereof, or by destroying or carrying off the ballot box, or by the use of other forcible or violent means to prevent a nomination being fairly made, or election from being fairly and legally conducted, he shall be guilty of a misdemeanor."

The statutes, supra, have always been considered a part of the penal provisions of our laws relating to the general subject of nominations and elections and the whole of Title II of T.C.A., including Sec. 2-2201, is now devoted to elections, nominations and the general provisions in relation thereto.

Our Court has passed upon a number of cases presented to it in which provisions of different titles or chapters of the Code appear to contravene each other and in each and every case the Court has scrupulously followed the plain mandate of Sec. 1-303 T.C.A. supra, in holding that the provisions of each title or chapter shall prevail as to all matters and questions growing out of the subject-matter of that title or chapter. Ch. 22, supra, covers the entire subject-matter of the penal provisions relating to the holding of political conventions, primary or general elections and Sec. 2-2201 T.C.A. is a particular statute of the election laws relating to and providing for the penalty for breaking up an election. Sec. 39-3901 T.C.A., supra, relates to the general subject of robbery and, of course,

has no particular application to nominations, primary or general elections.

In the case of *Keefe v. Atkins,* 199 Tenn. 183, 285 S.W. 2d 338, the Court was dealing with apparent conflicts between general and special statutes or statutes having to do with matters generally and statutes relating to specific matters. The Court in this case, approved again the holding in *Woodroof v. City of Nashville,* supra, and *Atlas Powder Co. v. Leister,* supra, in stating where there are two provisions, one of which is special and particular and certainly includes the matter in question and the other is general, which if standing alone would include the same matter and thus conflict with the special Act or provision, the special Act must be taken as intended to constitute an exception to the general provision. The exact rule as announced in *Woodroof v. City of Nashville,* supra, case is:

"Another rule of statutory interpretation is that a special statute or a special provision of a particular statute controls a general provision in another statute or a general provision in the same statute." [183 Tenn. 483, 192 S.W.2d 1015.]

Beginning with the enactment of Ch. 17, Acts of 1799, the legislative body of our government has made special provision for the holding of elections. When the method of selecting a candidate of a party either by nominating conventions or nominating primaries came into existence, the Legislature changed the wording of the statute dealing with the penalties to be inflicted for breaking up an election as originally set out in Ch. 17 and made it a penalty to break up or interfere with a nominating convention or a nominating primary. Therefore, the penal

provision of the special provisions relating to the holding of elections generally has been changed from time to time to provide for changing situations and changing conditions, which changes have been special or specific in nature having to do with special or particular things.

In construing Sec. 1-301 T.C.A. as it applies to the case at bar we believe that the Legislature had in mind such a situation as that presented in this case. We believe that the Legislature turned its mind to particular matters and to a particular provision of the law when it prescribed the penalty for breaking up an election by force or violence. The force or violence contemplated by the Legislature that might be used by such person would include the use of a deadly weapon to accomplish the end of the party so seeking to break up such election, primary or convention. The defendant did assault the election officials, he did carry away the ballot box, all of which was done by violence and by the use of a gun. The armed robbery statute is one of general application. We hold that since the Legislature has spoken in specific terms as to the penalty to be inflicted for breaking up or interfering with an election, or a nomination in convention or otherwise, then the general statute having to do with armed robbery has no application.

There is ample and sufficient evidence in the record to warrant us in affirming the verdict of the jury. However, it is our duty as the Court of last resort of this State to preserve and uphold the great body of the law and to maintain a continuity thereof, and to see that it is properly applied in all cases coming before us for final decision. In performing this duty, we recognize that on occasions a guilty party may escape punishment but

maintaining the majesty of the law and the respect therefor by all citizens is more important to the preservation of our liberty than is the punishment of one individual.

Therefore, it is our opinion that the acts of this defendant in breaking up this election were punishable under Sec. 2-2201 T.C.A. only and it is under this section of the Code that he could have been indicted. Being of this opinion, it is our duty to reverse and dismiss this case, which we do at the cost of the State.