Terry HORN, Sr., Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

July 18, 1977.

Edward Michael Ellis, Knoxville, for petitioner.

William C. Koch, Jr., Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Ralph E. Harwell, Asst. Dist. Atty. Gen., Knoxville (Brooks McLemore, Atty. Gen., Nashville, of counsel), for respondent.

## OPINION

HARBISON, Justice.

On September 2, 1975 the Grand Jury for Knox County returned three separate indictments against the petitioner under the statute dealing with false pretenses, T.C.A. § 39–1901. The indictments charged that the petitioner was guilty of obtaining sums of money from each of three named individuals by selling to them clover seed known as Alta Mammouth clover seed while falsely, fraudulently and feloniously representing to each of the purchasers that the seed involved was Kenland clover seed. The indictment charged that the latter was a more valuable brand of seed and that the petitioner falsely and fraudulently misrepresented the name of the seed being sold, "well knowing said representations were false" and that the seed was in fact not the brand which he stated it to be. Each indictment charged that the respective pur-

chaser named therein relied on these false pretenses.

Petitioner filed a motion to dismiss the indictments, alleging that he "could only have been charged with a violation of the Tennessee Seed Law as codified at Tennessee Code Annotated, Sections 43–921, et seq."

■ The trial court sustained the motion to dismiss each indictment. On appeal, the Court of Criminal Appeals, in a divided decision, reversed, holding that the provisions of the Tennessee Seed Law of 1972 did not preclude indictment of the petitioner under the statute dealing with false pretenses. We granted certiorari to give further consideration to this issue.

We have concluded that the majority opinion of the Court of Criminal Appeals was correct. The statute on false pretenses defines an offense punishable as a felony. At all times pertinent to this case it provided:

"Any person, who, by any false pretense, or by any false token or counterfeit letter, with intent to defraud another, obtains from any person any personal property, or the signature of any person to any written instrument, the false making of which is forgery, shall, on conviction, be punished as in case of larceny."

Further provisions of the statute define the concept of "false pretense" in a rather comprehensive manner, including all cases of pretended buying, borrowing, or hiring, bailment or deposit.

The Court had occasion to consider the provisions of this statute in the recent case of *State v. McDonald*, 534 S.W.2d 650 (Tenn.1976), *cert. denied*, 425 U.S. 955, 96 S.Ct. 1733, 48 L.Ed.2d 200 (1976). There the history and previous constructions of the statute were discussed. In that case it was held that personal reliance by the victim upon a false representation was not an essential element of the offense, so long as the person to whom the representation was made himself relied thereon, to the ultimate detriment of the victim.

In the case of *Mullican v. State*, 210 Tenn. 505, 360 S.W.2d 35 (1962), the Court stated:

"It seems to us that under this statute the intent to defraud is the gravamen or an essential element in the crime." 210 Tenn. at 511, 360 S.W.2d 38.

In the case of *Beck v. State*, 203 Tenn. 671, 315 S.W.2d 254 (1958), the Court dealt with the sufficiency of the allegations of an indictment under the false pretenses statute. There it was charged that the accused had obtained from the prosecuting witness the sum of $7,000 by means of fraudulent representations to him concerning the sale of a quantity of whiskey under a court order. One of the principal assignments on appeal was that the indictment itself was duplicitous, because other offenses might be carved out of the allegations. Rejecting this contention, the Court concluded that:

". . . this indictment very clearly charges in substance a violation of the false pretense statute and that, even though other offenses either independent or lesser included offenses suggest themselves, the indictment is nevertheless not duplicitous." 203 Tenn. at 677–678, 315 S.W.2d at 257.

■ It is the insistence of petitioner that in enacting the Tennessee Seed Law of 1972, T.C.A. §§ 43–921 et seq., the General Assembly dealt in exclusive terms with the sale of seed, and that this specific statute should be construed as superseding any general criminal laws which might deal with the same subject, or as impliedly repealing them.

We are not able to accept this contention. In the first place the 1972 Act was itself a successor to a number of previous statutes regulating the sale of seed, some of these going back to 1909. In the case of *State v. McKay*, 137 Tenn. 280, 193 S.W. 99 (1916), the Court sustained a statute known as the "Pure Seed Law" against a number of constitutional attacks, and held that the statute represented a valid exercise of the police power of the State. Other statutes on the subject were passed in 1939, with amendments in 1943 and 1961. The 1972 statute was a revision of previous statutes,

and like them it contains a number of prohibitions in connection with the selling or transporting of agricultural or vegetable seed within the State. T.C.A. § 43–925. Among the prohibited acts are two which petitioner insists must control the indictment in the present case. The statute prohibits the sale of seed:

"(2) Not labeled in accordance with the provisions of §§ 43–921—43–934 or having a false or misleading labeling; or

"(3) Pertaining to which there has been false or misleading advertisement . . . ."

The indictments in the present case do not charge that the seed which petitioner purveyed had a false or misleading label. The seed statute, T.C.A. § 43–927, exempts certain persons and transactions from coverage. The indictments do not contain allegations showing whether petitioner's sales were or were not within these exemptions. They simply charge that the petitioner feloniously sold and delivered the seed to each of the purchasers, representing them to be a different and more valuable brand, when in fact he knew that the representation was false.

■ Since the case was dismissed in the trial court on motion, there is no evidentiary record. For purposes of the motion, the allegations of the indictments must be taken as true. The acts with which the petitioner is charged in the indictments may or may not be covered by the seed law. What the evidence will show upon trial, we cannot know, but there are neither affidavits nor other factual material in the record as the case now stands to establish that the petitioner was covered by the 1972 Act. Therefore his motion, stating that he "could only have been charged" with a violation of the 1972 seed law, is, on its face, not well taken.

Further, as pointed out in the majority opinion of the Court of Criminal Appeals, the penal provisions of the 1972 Act, particularly the portion dealing with false labeling, make no reference to fraudulent intent or scienter. They simply prohibit the sale of improperly labeled or advertised seeds, and make violation a misdemeanor, punishable by a fine. The Commissioner of Agriculture is authorized to institute prosecution, but is directed first to afford an offender an opportunity to appear at a private hearing.

This seed law is similar to many other statutes dealing with various aspects of agriculture. Many of these provide for administrative regulations and controls, making violations punishable as misdemeanors. *See*, e. g., T.C.A. § 43–526 (Plant Pest Act); T.C.A. § 43–708 (Insecticide Act); T.C.A. § 43–1139 (Commercial Fertilizer Law of 1969); T.C.A. § 43–2003 (keeping of records in connection with the sale of cotton); T.C.A. § 43–2135 (tobacco sales); T.C.A. § 43–2906 (Pesticides); T.C.A. § 44–119 (sales of cats and dogs).

These are but examples of numerous statutes regulating agriculture and commerce. Most of these contain criminal sanctions for violations, but ordinarily do not require scienter or fraudulent intent as an essential element of the proscribed activity.

The case is, therefore, unlike that of *Haley v. State,* 156 Tenn. 85, 299 S.W. 799 (1927), relied upon by petitioner. There a statute made it unlawful for any person to obtain, "with fraudulent intent", money or other property by means of a bad check or draft. This statute was held to be in conflict with, and impliedly to repeal, the false pretenses statute, insofar as offenses committed by check or draft were concerned, fraudulent intent being a specific requirement both of the false pretenses statute and of the bad check law under consideration.

■ In order for a later criminal statute to repeal by implication an earlier one, the offense defined in the two statutes must be identical, and the statutes must relate to the same subject matter and be enacted for the same purpose. *See Chadrick v. State,* 175 Tenn. 680, 137 S.W.2d 284 (1940); *Hayes v. State,* 159 Tenn. 314, 18 S.W.2d 1 (1929).

Of course, upon the trial of this case, the evidence may show a violation of the 1972

statute, and not a violation of the false pretenses statute. Further, depending upon the evidence adduced, it may be necessary for the trial judge to instruct the jury on the 1972 statute as an included offense, much as shoplifting may be a lesser included offense under a charge of petit larceny, as recently held by the Court in the case of *Wright v. State,* 549 S.W.2d 682, released at Knoxville for publication on April 11, 1977.

■ At the present stage of the proceedings, however, only the allegations of the indictments are involved. Those allegations are sufficient to charge a violation of T.C.A. § 39–1901. The grand jury was not precluded from making those charges simply because of the existence of the seed statute.

The judgment of the Court of Criminal Appeals is affirmed, the motion to dismiss filed on behalf of petitioner is overruled, and the cause is remanded to the trial court for further proceedings, at the cost of petitioner.

COOPER, C. J., and FONES and BROCK, JJ., concur.

HENRY, J., dissents.

HENRY, Justice, dissenting.

I respectfully dissent.

Sec. 39–1901, T.C.A. is a general statute covering false pretenses. As pertinent to the instant case, it proscribes the obtaining of "any personal property" by means of any "*false token* . . . with intent to defraud another . . . ." (Emphasis supplied.)

Sec. 43–925, T.C.A., a part of the Tennessee Seed law, reads in pertinent part as follows:

(a) It is unlawful for any person to sell, offer for sale, expose for sale, or transport for sale any agricultural or vegetable seed within this state:

\* \* \* \* \* \*

(2) Not labeled in accordance with the provisions of §§ 43–921—43–934 or having a *false* or misleading labeling. (Emphasis supplied.)

It is obvious that a false label would be a false token and a false token would include a false label. The offense, charged in the indictment, therefore, could come within the scope of either statute, from a standpoint of the descriptive terminology. The sale of falsely labelled seeds is, of course, a fraudulent act. The question is whether the specific nature of the Tennessee Seed Law preempts indictment under the false pretense statute by impliedly repealing or superseding overlapping portions of the general law. In my view, it does. The Tennessee Seed Law was obviously adopted, in part, to suppress the corrupt and fraudulent practice of selling falsely labelled seeds. I disagree with the majority's implicit conclusion that fraudulent intent or scienter are not involved in the Seed Law because it makes no reference to these elements. To follow the majority's reasoning is to hold that it is made a criminal offense in Tennessee to sell seeds that are merely incorrectly labelled, irrespective of intent and scienter. False and misleading labelling to my mind connotes affirmative, knowledgeable, false and deceptive action as opposed to passive conduct in failing to insure that seeds are labelled correctly.

We have a general statute under which the selling of falsely labelled seeds is punishable as larceny and a subsequent specific statute making such action a misdemeanor.

I recognize and reiterate the oft-repeated rule that repeals by implication are not favored in the law. *Reams v. Trostel Mechanical Industries, Inc.,* 522 S.W.2d 170 (Tenn.1975). Neither are they foreign to it. Moreover, we do not deal precisely with a repeal by implication, but with a question of which of two valid statutory enactments applies in the context of a prosecution for selling falsely labelled seeds.

In *Haley v. State,* 156 Tenn. 85, 299 S.W. 799 (1927), the defendant had obtained money by means of worthless checks, but was indicted and convicted under the statute making it a felony to obtain personal property under false pretenses. (Shannon's Annotated Code, Sec. 6568; Sec. 39–1901,

T.C.A.) Chapter 178 of the Acts of 1915 (see Sec. 39–1959, T.C.A., for substantially similar present law), in substance, made it unlawful to obtain money or other property or credit by means of a worthless check and provided a punishment based upon the amount or value. In *Haley*, the value was within the misdemeanor classification. The *Haley* court was thus presented with precisely the same situation we face—a felony conviction under a general law versus a misdemeanor conviction under a later and specific law.

After noting that legislative intent is the controlling consideration, the Court said:

> No principle of law is better settled than that a statute purporting to cover an entire subject repeals all former statutes upon the same subject, either with or without a repealing clause, and notwithstanding it may omit material provisions of the earlier statutes.

> \*　　\*　　\*　　\*　　\*　　\*

> There can be no doubt but that the Legislature intended that one who procured less than $30 [thirty dollars] by use of a check, which was not paid, should be guilty of a misdemeanor only

> The two acts are, therefore, repugnant, and the former must give way to the latter. There cannot exist at the same time two statutes prohibiting the same wrong where they prescribe different degrees of punishment. The *accused cannot be convicted of a felony where the Legislature, by its latest expression, has said specifically that for such offense he shall only be convicted of a misdemeanor.* (Emphasis supplied) 156 Tenn. at 89–90, 299 S.W. at 800.

This Court in *Hart v. Pierce,* 169 Tenn. 411, 88 S.W.2d 798 (1935) followed *Haley* and stated:

> While, as insisted, repeal by implication is not favored, our many cases so announcing all agree that a later statute will operate as a repeal of an earlier statute, if the repugnance and conflict between them is such that they cannot stand together. 169 Tenn. at 418, 88 S.W.2d at 800.

In *Woodroof v. City of Nashville et al.,* 183 Tenn. 483, 192 S.W.2d 1013 (1946) the Court commented thusly:

> Another rule of statutory interpretation is that a special statute or a special provision of a particular statute controls a general provision in another statute or a general provision in the same statute

> .　.　.

> .　.　. the reason and philosophy of the rule is that where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision.

> \*　　\*　　\*　　\*　　\*　　\*

> The rule　.　.　. in its usual application is employed when the general provision is sequent to the special provision. It has even clearer application where the special provision follows the general provision. 183 Tenn. at 488–89, 192 S.W.2d at 1015.

A most significant case is *State v. Lewis,* 198 Tenn. 91, 278 S.W.2d 81 (1955) where the Court was confronted with two penal statutes relating to the removal of timber from the land of another. The first Code section made the removal a felony; the second and newer, a misdemeanor. The Court held the conflict to be irreconcilable, saying:

> The result of that situation would be to have the same Act [sic] under one statute punishable as a misdemeanor, but punishable under the other statute as a felony. *That cannot be.* (Emphasis supplied.) 198 Tenn. at 95, 278 S.W.2d at 82.

This is precisely the situation in the instant case.

This Court, in *Mowery v. State,* 209 Tenn. 250, 352 S.W.2d 435 (1961), in an excellent and exhaustive opinion by the late Justice Weldon White, further amplified and clarified these rules of construction. There the defendant, armed with a pistol, went to a voting precinct and forcibly took and re-

moved the ballot box, in violation of Sec. 2–2201, T.C.A., which makes it a misdemeanor to break up an election. He was indicted and convicted for armed robbery.

The Court relied upon *Lewis* and *Haley, supra,* as well as other authorities, in reversing the conviction and dismissing the case. The Court reasoned that Sec. 2–2201, T.C.A., "covers the entire subject-matter of the penal provisions relating to the holding of . . . elections and Sec. 2–2201 T.C.A. is a particular statute of the election laws relating to and providing for the penalty for breaking up an election," whereas Sec. 39–3901, T.C.A., "relates to the general subject of robbery and, of course, has no particular application to nominations, primary or general elections." 209 Tenn. at 259–60, 352 S.W.2d at 440.

> Paraphrasing other cases the Court said: [W]here there are two provisions, one of which is special and particular and certainly includes the matter in question and the other is general, which if standing alone would include the same matter and thus conflict with the special Act or provision, the special Act must be taken as intended to constitute an exception to the general provision. 209 Tenn. at 260, 352 S.W.2d at 440.

I accept the reasoning of these cases and would hold that Sec. 43–925, T.C.A., as a special enactment purporting to cover the entire subject of the offense of selling mislabelled seeds, preempts or supersedes Sec. 39–1901, T.C.A., the general statute relating to false pretenses. This conclusion is mandated by the fact that the Tennessee Seed Law is a comprehensive enactment intended to encompass virtually all fraudulent transactions involving the sale of seed.

This dissent is not out of harmony with *Wright v. State,* 549 S.W.2d 682 (Tenn.1977) wherein we held that shoplifting was a lesser included offense under a charge of petit larceny. In my view, we would have reached the same result in *Wright* as I reach today, but for the fact that the shoplifting statute (Sec. 39–4236) contains phraseology to the effect that prosecution under Sec. 39–4235 "shall not be exclusive and shall be in addition to previously existing offense." The Seed Law contains no such phraseology.

I would reverse the Court of Criminal Appeals, accept the views of the dissenting member of that court and affirm the trial judge.