IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2017 Session

**WILLIAM B. GATLIN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**No. 25-CR-157-PCR          F. Lee Russell, Judge**
_____

**No. M2016-00824-CCA-R3-PC – Filed June 23, 2017**
_____

Petitioner, William B. Gatlin, appeals the denial of his petition for post-conviction relief. Petitioner alleges that the jury at his original trial was subjected to an improper outside influence, thereby violating his Sixth Amendment right to an impartial jury. Petitioner also contends that the post-conviction judge was disqualified and should have recused himself because he had also presided as the trial judge in Petitioner's original trial. Upon our review of the record and applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Casey A. Long, Franklin, Tennessee, for the appellant, William Bryan Gatlin.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert J. Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

In 2013, Petitioner was convicted by a jury of one count of possession of marijuana with intent to sell, one count of possession of marijuana with intent to deliver, and one count of possession of drug paraphernalia. The trial court merged the marijuana convictions and imposed a total effective sentence of two years, eleven months, and

twenty-nine days. On direct appeal, Petitioner challenged the trial court's denial of "his motion to suppress the evidence obtained during the knock-and-talk encounter and the warrantless entry into his apartment" as well as the sufficiency of the evidence. *State v. William Bryan Gatlin*, No. M2013-02440-CCA-R3-CD, 2015 WL 59746, at *3 (Tenn. Crim. App. Jan. 2, 2015), *perm. app. denied* (Tenn. May 22, 2015). This Court affirmed the judgment of the trial court, and the Tennessee Supreme Court denied permission to appeal. *Id.* at *1.

With the assistance of counsel, Petitioner filed a timely petition for post-conviction relief. As pertinent to this appeal, Petitioner alleged a violation of his Sixth Amendment right to an impartial jury based on a newspaper editorial that claimed that the jury was kept in the courtroom for eleven hours with only a lunch break and that at least one juror had doubts about the guilty verdict.[1] Petitioner argued that this editorial suggested that the jury "reached their verdict under an improper motivation," basing their decision to find Petitioner guilty "upon their desire to terminate their duties and be released to go home and not . . . upon the sufficiency of the evidence."

At a status hearing on January 8, 2016, counsel apparently sought recusal of the Honorable F. Lee Russell as the post-conviction judge because he had also presided as the trial judge.[2] Judge Russell granted a continuance for counsel to submit a brief on the issue. Counsel filed a brief on January 26, 2016, arguing that a trial judge is statutorily disqualified from hearing a subsequent post-conviction petition that does not allege ineffective assistance of counsel. On February 17, 2016, the Honorable Forest A. Durard, Jr., presiding judge for the Seventeenth Judicial District, designated Judge Russell to hear the post-conviction petition, finding that as "the judge who originally presided over Petitioner's case . . . he would be most familiar with the same." A post-conviction evidentiary hearing was held on March 11, 2016.

At the beginning of the hearing, post-conviction counsel confirmed that there was no allegation of ineffective assistance of trial counsel. The post-conviction court inquired whether trial counsel was aware of the allegation made in the editorial and whether the issue was waived for failing to address it on direct appeal. Post-conviction counsel said that the editorial was published after the appeal was filed but before it was heard.[3] Trial

---

[1] Petitioner also alleged a violation of his Fourth Amendment right against unreasonable searches and seizures. However, this issue was previously determined on direct appeal, *see* T.C.A. § 40-30-106(h), and has not been pursued in this appeal, *see Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) (noting that issues raised in the lower court but not raised on appeal are deemed abandoned), *perm. app. denied* (Tenn. Apr. 16, 2010).

[2] A transcript of this hearing is not in the record.

[3] The copy of the editorial that was eventually entered into evidence does not indicate the date it was published. The direct appeal in this case was heard at oral arguments on October 29, 2014.

counsel was present during the post-conviction hearing but did not testify. Petitioner also did not testify.

The first witness to testify was Karen Hall, the author of an editorial in the Marshall County Tribune that referenced, without mentioning any specific names, Petitioner's original trial. Ms. Hall explained that the editorial was intended to "work people up about the local elections" and encourage people to "speak their mind if they were unhappy and needed more time to think or weren't ready to decide." Ms. Hall testified that her daughter, Maria Hall, had served as a juror on Petitioner's trial. Juror Hall told her mother that she felt that the jury had been "asked to stay too long and they were tired and they couldn't hold out and make a good decision." Ms. Hall testified that she believed her daughter was a truthful person.

The editorial was entered into evidence and reads, in pertinent part, as follows:

> The Tribune has been informed that law enforcement and the District Attorney's office recently needed – or wanted – to finish a jury trial in one day. By the time the jurors retired to deliberate, they had been in the courtroom, except for a lunch break, for 11 hours. A member of the jury told me all they wanted to do was find the defendant guilty so they could go home. This particular jury member had some doubts about the evidence, and didn't think "guilty" was the right verdict, but just didn't have the will to keep the other jurors there to argue it out.
>
> Making the jurors work until after 9 p.m. wasn't fair on them, and wasn't fair on the defendant.
>
> . . . .
>
> . . . Jury members could have spoken up and said, "We're tired, we can't think any more – please let us go home and come back to finish this tomorrow!"

Ms. Hall admitted that she did not verify the information that Juror Hall told her because she was writing an editorial rather than a news story. Ms. Hall testified that since the publication of her editorial, she had received a letter from Judge Russell informing her that the allegation about the lack of breaks was incorrect. The letter, dated May 12, 2014, was entered into evidence. The letter stated that the judge had reviewed the trial transcript and determined that the jury received the following breaks:

> 10:57 A.M. – 11:30 A.M.
> 12:26 P.M. – 1:32 P.M. (lunch break)

2:02 P.M. – 2:20 P.M.
4:24 P.M. (offer and jury declined break)
5:36 P.M. – 5:41 P.M.
6:19 P.M. – 7:32 P.M. (supper break)
9:03 P.M. (jury excused for deliberations and invited to take whatever breaks they needed to take during deliberations and that if any one of them was too tired to continue that night all twelve would need to come back the next morning to continue deliberations)

Next, Maria Hall testified that she served as a juror on Petitioner's trial. She remembered that she arrived at the courthouse for jury selection around "quarter to nine in the morning," that the trial started "sometime after lunch," and that she was released from her duty as a juror "sometime after nine." It was sometime after dark when the jury started their deliberations. She could not remember how long she and the other jurors deliberated, but she did not "think it was more than an hour."

Juror Hall testified that she was originally of the opinion that Petitioner was not guilty of "dealing drugs." She did not believe that a certain piece of evidence was a tally sheet of drug sales. She expressed her opinion to the other jurors but was not successful in convincing them. Juror Hall eventually voted guilty because she was under the impression that the jury had to come to a unanimous decision. Juror Hall testified that she did not understand what a "hung jury" was at the time. Juror Hall testified that the jury was not offered the opportunity to go home for the night and return the following day to continue deliberations. She stated that she would have accepted that offer because she was anxious to get home to feed animals in her care. However, she was not sure that a break would have changed her ultimate vote because there were eleven other jurors against her. She felt that it was "hopeless" to try to get the others to "change their minds or see things from [her] perspective."

Juror Hall admitted that she spoke to her mother about her experience as a juror after the trial was concluded. Juror Hall did not read her mother's editorial until the day before the post-conviction hearing, and she agreed that it was "an abbreviated account" of the trial. Juror Hall remembered the jury taking "[m]aybe four or more" breaks as well as declining an offer to take a break "so we could get it over with faster." Juror Hall clarified that the jurors were not given the opportunity to go home and come back in the morning to continue deliberations. After the post-conviction court warned Juror Hall about the consequences of lying under oath, she testified that the judge was the person who told her and the other jurors that the case had to be concluded that day. She said that the judge explained that "he had another courtroom to be in the next day." She said the statement was made before jury selection started and that she "had no idea that the trial was going to go on that late into the night."

On cross-examination, Juror Hall stated that she occasionally wrote for the newspaper, assisting her mother in covering trials in the Circuit Court of Marshall County. She never stayed during jury deliberations, but she had heard judges give jury instructions before. Juror Hall agreed that judges typically gave juries an estimation of how long a trial was expected to last. Juror Hall did not believe that she misunderstood the judge when he said that this trial had to be completed in a single day.

Juror Hall agreed that the jury had several breaks throughout the trial, including a morning break, a lunch break, bathroom breaks in the afternoon, and a supper break. The jury also turned down an offer to take a break. Juror Hall denied that she told her mother that the jurors were in the courtroom for eleven hours without a break as was reported in the editorial. She testified that she was "surprised" to read that in the editorial and stated that she "would have never insinuated or said that we had no breaks." Juror Hall did not know why her mother attributed the need to complete the trial in a day to the District Attorney's Office or law enforcement instead of the judge.

Juror Hall agreed that the judge instructed the jury that it had to reach a unanimous verdict in order to convict Petitioner. She testified that she had never sat in on a trial where the jury could not reach a verdict. Juror Hall did not know what would happen if a jury could not reach a unanimous verdict, stating "I figured that there was either guilty or innocent. I didn't know that there was a middle ground." Juror Hall testified that she voted guilty not because the other jurors changed her mind but because she "just gave up." Juror Hall testified that the trial ended around nine o'clock that night and that she was concerned about taking care of someone else's animals. Juror Hall agreed that she raised her hand when the judge polled the jury by asking "if that is your individual verdict, ladies and gentlemen, would you raise your right hand." Juror Hall denied that she lied to the court at that time. Juror Hall explained that she voted guilty because believed Petitioner "was guilty of something," even though she "didn't think he was guilty of being a dealer."

On redirect examination, Juror Hall further explained that she voted guilty because she "couldn't persuade the other eleven people that I didn't see the evidence the way they did. And it was getting late and everyone wanted to go home." Juror Hall testified that she also had her responsibilities with regard to the animals she was caring for on her mind. She testified that she did not know they had "an option to be a hung jury" and that "everyone else was getting annoyed with [her]." She agreed that 9:00 p.m. was late considering that she had spent "12 hours away from home."

On recross-examination, Juror Hall explained that she felt that the other jurors were annoyed with her because she disagreed that a piece of paper listing names and numbers that had been entered into evidence was a tally sheet showing drug sales. She

estimated that she and the other jurors discussed the tally sheet for fifteen minutes or less. None of the jurors expressly said they were annoyed with her or raised their voice at her. On further redirect examination, Juror Hall testified that the other jurors were not "hostile" toward her but did seem "aggravated" and "impatient." She felt that "eleven people [were] like, come on, you're the only one that's between us and going home." The post-conviction court showed Juror Hall a copy of the Tennessee Pattern Jury Instructions, and she agreed that the judge read it to the jury before their deliberations. Juror Hall testified that she was listening when the judge read the instructions and that she recalled him reading Tennessee Pattern Jury Instruction 43.02, which states, "But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict."

The State then called Donald Smith, another juror from Petitioner's trial. Juror Smith agreed that the jury received "a sufficient number of breaks to keep [them] relaxed and not being concerned about wetting [their] pants and stuff like that[.]" Juror Smith recalled taking lunch and supper breaks. Juror Smith did not recall what time the jury returned its verdict other than it was at night. Juror Smith did not remember how long the deliberations took, but he denied that there was any animosity during the deliberation process. He did not remember "anybody telling anyone we need to get home, let's reach a verdict[.]" He agreed that when the verdict was reached, it appeared that everyone agreed with the verdict of guilty. Petitioner did not cross-examine Juror Smith. After the parties confirmed that they would not be calling any of the other jurors, they were dismissed by the post-conviction court.[4]

The written jury instructions were entered into evidence as well as a copy of the trial transcript that had been submitted to this Court on direct appeal. The post-conviction court then noted that the parties may not have received a copy of the memorandum opinion he had written prior to the hearing which contained a procedural history of the case. The memorandum was entered as an exhibit to the hearing and appears in the technical record as being filed the same day as the post-conviction hearing, though the certificate of service indicates that it was written in January 2016. Both the letter to Ms. Hall and the memorandum opinion contained a list of breaks that the jury took as determined by the post-conviction court's consultation with the court reporter and review of the trial transcript.

At the conclusion of the hearing, the post-conviction court found that the proof at trial was "overwhelming" and that "the only conclusion that an impartial juror could have reached was that the [Petitioner] was guilty." The post-conviction court stated that he did

---

[4] It appears that eleven of the twelve jurors from Petitioner's trial were subpoenaed for the post-conviction hearing and that the twelfth had passed away sometime after the trial.

not tell the jury that the trial must be completed in a day and that he did offer the jury the opportunity to resume deliberations in the morning if any one of them was too tired to proceed. The post-conviction court found that Juror Hall's testimony was "entitled to no credibility" and was "full of contradictions."

On March 28, 2016, the post-conviction court filed a written order dismissing the petition along with a supplemental memorandum opinion containing additional findings. The post-conviction court found that the editorial was "rank hearsay" and that its allegation about the lack of breaks was "demonstrably false." The post-conviction court noted that the editorial was brought to the attention of trial counsel in time for him to raise any issues with regard to the lack of breaks on direct appeal. The post-conviction court found that deliberations were short, that the only piece of evidence at issue—the tally sheet—was discussed for fifteen minutes, that there was no evidence of any other juror applying undue pressure on Juror Hall to get her to change her vote to guilty, and that Juror Hall's testimony that she voted guilty because she was concerned about getting home to care for animals was not credible. The post-conviction court found that there was no clear and convincing evidence of any juror misconduct or any deprivation of Petitioner's constitutional rights. Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner argues that the testimony of Juror Hall established that his Sixth Amendment right to an impartial jury was violated. He asserts that Juror Hall's testimony—that the judge told the jury that the trial had to be completed in a day and did not offer the jurors the opportunity to resume deliberations the next day—"create[d] a presumption that the jury was exposed to extraneous information that prejudiced the [Petitioner's] case" and that the State failed to rebut this presumption. Petitioner also argues that the post-conviction judge should have recused himself because he also presided as the trial judge in this case, relying on prior versions of the Post-Conviction Procedure Act and cases interpreting those versions. Petitioner argues that recusal is further warranted because his allegation with regard to the improper influence on the jury "creates an appearance of bias even if no actual bias may exist." The State responds that there was no credible evidence establishing an improper outside influence on the jury and that the cases relied upon by Petitioner for the post-conviction court's recusal are no longer good law. We will address the threshold issue of whether the post-conviction judge should have recused himself before addressing the merits of Petitioner's Sixth Amendment claim.

*I. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of

Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citations omitted). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

## II. Recusal of Post-Conviction Judge

"The right to a fair trial before an impartial tribunal is a fundamental constitutional right." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002). Article VI, section 11 of the Tennessee Constitution provides, "No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested." Pursuant to Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." "A judge should grant a motion to recuse when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted). The test for recusal is objective, *id.*, and this Court will review the issue de novo, Tenn. S. Ct. R. 10B, § 2.01.

Petitioner argues that a trial judge is disqualified from later presiding as the post-conviction judge when there is no allegation of ineffective assistance of counsel, relying primarily on this Court's opinion in *Steadman v. State*, 806 S.W.2d 780 (Tenn. Crim. App. 1990). In *Steadman*, Judge Tipton summarized the historical development of the designation of a hearing judge under the Post-Conviction Procedure Act:

> The Post-Conviction Procedure Act, as originally enacted, required the petition to be filed with the clerk of the convicting court, but it had no provision limiting the original trial judge's authority to preside. 1967 Tenn. Pub. Acts, ch. 310, § 2. In 1969, the legislature amended the law by requiring the Chief Justice of the Tennessee Supreme Court to designate a

judge "to hear and determine such petition, *except the Judge who presided at the criminal trial in which the conviction occurred*." 1969 Tenn. Pub. Acts, ch. 242, § 1 (emphasis added). This amendment has been viewed, and reasonably so, as a legislative attempt to "ensure that the post-conviction petition would be heard before an impartial judge." Anderson, *Post-Conviction Relief in Tennessee—Fourteen Years of Judicial Administration under the Post-Conviction Procedure Act*, 48 Tenn. L. Rev. 605, 616, n. 42 (1981). Likewise, its application appeared mandatory.

Mr. Anderson's article notes that the legislature then deleted the original judge prohibition in 1971 in response to complaints that cases were not being heard by the original trial judge. 48 Tenn. L. Rev. at 622. However, in 1972, the legislature specifically restored the prohibition, but with an exception relating to competency of counsel issues:

> The chief justice of the Tennessee Supreme Court shall designate and assign any chancellor, judge of the criminal court, or circuit court judge to hear and determine such petition, except the judge who presided at the criminal trial in which the conviction occurred, provided however, the original trial judge, where available, shall be designated where an issue is raised as to the competency of counsel representing the petitioner in the original proceeding.

1972 Tenn. Pub. Acts, ch. 792, § 1; T.C.A. § 40-30-103(b) (1982).

In *May v. State*, 589 S.W.2d 933 (Tenn. Crim. App. 1979), this Court construed the 1972 amendment in the context of whether or not it constituted a mandatory prohibition regardless of the lack of actual prejudice. . . .

*Steadman*, 806 S.W.2d at 783 (footnote omitted). The *May* court concluded that the statutory prohibition was mandatory but that the "'error ha[d] been rendered harmless by the circumstances of this case . . . where the only matter raised by petitioner concerns the orders of the appellate court and not the actions of the judge who presided at trial.'" *Steadman*, 806 S.W.2d at 783 (quoting *May*, 589 S.W.2d at 934). Then, in *State v. Garrard*, 693 S.W.2d 921 (Tenn. Crim. App. 1985), this Court again interpreted the statutory provision for the designation of a post-conviction judge, which at the time allowed the designation of any judge "except the judge who presided at the criminal trial in which the conviction occurred, unless the issue of incompetent trial counsel is raised." *Id*. at 922. Despite very similar language to that at issue in *May*, the *Garrard* court held that "[t]he designation of a hearing judge is purely an administrative function and nothing

more" and concluded that "[t]here was no constitutional deprivation" for the trial judge to preside as post-conviction judge even when there was no allegation of ineffective assistance of counsel. *Id.*

Judge Tipton provided the following analysis of the statute in effect at the time *Steadman* was decided:

> In 1988, the legislature again amended T.C.A. § 40-30-103(b). Subdivision (1) entails the procedures involved when competency of counsel is an issue. Subdivision (2) states as follows:
>
> > If such petition does not raise the issue of competency of counsel at the original trial or appellate proceeding, the chief justice shall designate and assign an appropriate judge to hear and determine such petition. Unless the provisions of subdivision (1) are applicable, *the designated judge shall not be the same judge who presided at the trial in which the conviction occurred.* (emphasis added).
>
> Thus, the legislature has clearly stated that the original judge is not competent to hear and determine this type of post-conviction case and its use of the word "shall" in the statute, as in "shall not," made the original judge prohibition mandatory. . . .
>
> Such a statutory prohibition's purpose is to "guard against prejudgment of the controversy." *In re Cameron*, [151 S.W. 64, 76 (Tenn. 1912)]. Also, it should apply even though, as in this case, there is no evidence of partiality by the trial judge. . . . In essence, the presence of a statutory or constitutional provision that a judge is incompetent in a given proceeding is a declaration that, as a matter of policy, the appearance of fairness in the justice system is as important as actual fairness to our society.
>
> . . . .
>
> We, therefore, hold that, absent consent or waiver by the parties, T.C.A. § 40-30-103(b)(2) renders the judge who presided at the convicting trial incompetent to hear and determine a post-conviction petition which attacks that conviction or resulting sentence, but does not raise the issue of competency of counsel. Further, such disqualification bars the original trial judge from taking any judicial action which may dispose of the petition or otherwise affects its merits, even if no evidentiary hearing is required.

*Steadman*, 806 S.W.2d at 784-85 (footnote omitted); *accord. State v. Lewis Ted Messer*, No. C.C.A. 146, 1989 WL 157931, at *1 (Tenn. Crim. App. Dec. 29, 1989).

Petitioner argues that "the *Steadman* case remains the law on this matter as it has not been reversed or modified by any other appellate decisions," citing Tennessee Supreme Court Rule 4(G)(2).[5] However, just three years after the *Steadman* opinion, the legislature again amended the language of 40-30-103(b) to read as follows:

> At either the trial proceeding or an appellate proceeding reviewing the proceeding, the presiding judge of the appropriate court shall assign a judge to hear the petition. *The issue of competency of counsel may be heard by a judge other than the original hearing judge.* If a presiding judge is unable to assign a judge, the chief justice of the supreme court shall designate an appropriate judge to hear the matter.

*Thomas E. Montooth v. State*, No. 01C01-9604-CC-00126, 1997 WL 381907, at *3 (Tenn. Crim. App. July 11, 1997) (emphasis in original) (quoting T.C.A. § 40-30-103(b) (Supp. 1993)), *perm. app. denied* (Tenn. 1998); *see also Harris v. State*, 947 S.W.2d 156, 172 (Tenn. Crim. App. 1996) (citing T.C.A. § 40-30-103 (Supp. 1994)). Then, in 1995, the legislature completely repealed and replaced the entire Post-Conviction Procedure Act. *See* 1995 Tenn. Pub. Acts, c. 207, § 1 ("Tennessee Code Annotated, Title 40, Chapter 30 is amended by deleting the chapter in its entirety and by substituting instead the following"); *id.* at § 3 ("This act shall . . . govern all petitions for post-conviction relief filed after this date"). The present version of the statute, now enumerated 40-30-105, provides for the designation of a post-conviction judge as follows: "the presiding judge of the appropriate court shall assign a judge to hear the petition. The issue of competency of counsel *may* be heard by a judge other than the original hearing judge." T.C.A. § 40-30-105(b) (2012) (emphasis added).

"[T]he General Assembly has plenary power within constitutional limits to change the common law by statute." *Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2000) (citation omitted). The provisions of the statute prevail over conflicting common law, and only where "a statute does not include and cover such a case [does] it leave[ ] the law as it was before its enactment." *Id.* (citations omitted). Moreover, "[n]o principle of law is better settled than that a statute purporting to cover an entire subject repeals all former statutes upon the same subject, either with or without a repealing clause, and notwithstanding it may omit material provisions of the earlier statutes." *Mowery v. State*, 352 S.W.2d 435,

---

[5] The State's contention that *Steadman* had not been cited on the issue of mandatory judicial recusal since it was decided is incorrect. *See William Guffey v. State*, No. 03C01-9108-CR-266, 1992 WL 20270, at *2 (Tenn. Crim. App. Feb. 10, 1992), *perm. app. denied* (Tenn. May 4, 1992); *John A. Brown v. State*, No. 01C01-9010-CR-00254, 1991 WL 94575, at *3 (Tenn. Crim. App. Jun. 6, 1991).

438 (Tenn. 1961) (citation omitted). Tennessee Code Annotated section 40-30-105(b), which covers the same subject as the statute at issue in *Steadman*, contains permissive rather than mandatory language. *See Huey v. King*, 415 S.W.2d 136, 139 (Tenn. 1967) (noting that "[i]t is well[-]settled that the term 'may' . . . is permissive and operates to confer a discretion"). Therefore, the holding in *Steadman* that the disqualification of the original trial judge is mandatory in post-conviction proceedings not alleging ineffective assistance of counsel has been abrogated by subsequent amendments to the Post-Conviction Procedure Act. *Cf. Clinton Mason v. State*, No. 01C01-9705-CR-00197, 1998 WL 140016, at *1 (Tenn. Crim. App. Mar. 25, 1998) (finding that the trial court erred in relying on *State v. Clark*, 774 S.W.2d 634 (Tenn. Crim. App. 1989), because of the 1993 amendment to T.C.A. § 40-30-103(b)), *perm. app. denied* (Tenn. July 13, 1998).

In fact, this Court has specifically held that Tennessee Code Annotated section 40-30-105(b) "does not prohibit the original trial judge from hearing the post-conviction petition." *Arthur Lee Jones v. State*, No. M2006-01835-CCA-R3-PC, 2007 WL 2042509, at *3 (Tenn. Crim. App. July 17, 2007), *perm. app. denied* (Tenn. Dec. 17, 2007). Since the amendment of the statute, this Court has reverted to the holding in *Garrard* that the designation of a post-conviction judge is "'purely an administrative function'" and that "it is not a 'constitutional deprivation' for the judge who presided over a petitioner's trial to also preside over his post-conviction proceeding." *Willis Holloway v. State*, No. W2014-02444-CCA-R3-PC, 2015 WL 6122155, at *3 (Tenn. Crim. App. Oct. 16, 2015) (quoting *Garrard*, 692 S.W.2d at 922), *perm. app. denied* (Tenn. Mar. 23, 2016); *see also Ronnie Lee Johnson v. State*, No. M2011-00881-CCA-R3-PC, 2012 WL 5377807, at *6 (Tenn. Crim. App. Oct. 29, 2012) (citing *Garrard* rather than *Steadman* as controlling precedent), *perm. app. denied* (Tenn. Mar. 5, 2013). This Court has even interpreted *Garrard* as standing for the proposition that "generally, adjudication of a post-conviction petition by the same court which presided over a petitioner's trial is both proper and expedient." *Christa Gail Pike v. State*, No. E2009-00016-CCA-R3-PD, 2011 WL 1544207, at *43 (Tenn. Crim. App. Apr. 25, 2011), *perm. app. denied* (Tenn. Nov. 15, 2011); *see also Harris*, 947 S.W.2d at 173 (noting the pervasiveness of the practice and concluding that "to require recusal whenever a trial judge in a post-conviction proceeding has knowledge of disputed facts [obtained from presiding at the earlier trial] would wreak havoc in the criminal justice system"). We hold that under Tennessee Code Annotated section 40-30-105(b), a trial judge is not statutorily disqualified from later presiding as the post-conviction judge regardless of whether the petition raises a claim of ineffective assistance of counsel.

While statutory disqualification was the primary legal basis for recusal provided in either the post-conviction court or on appeal, Petitioner also argued that his Sixth Amendment claim with regard to jurors "reach[ing] their verdict under an improper motivation" created an appearance of bias because it "allege[d] impropriety in the procedures surrounding the trial itself." In his appellate brief, Petitioner further alleges

that the appearance of bias was created when the post-conviction judge wrote a memorandum opinion prior to the hearing, "appeared to be attempting to testify and to introduce evidence on his own without the request or prompting of either party, appeared to threaten a witness with aggravated perjury, and engaged in other irregular actions" such as writing a letter to and meeting with Ms. Hall in regards to her editorial. To properly address such allegations, we will also review Petitioner's claim under general recusal principles.

As stated above, a judge should recuse himself whenever he has any doubt as to his ability to preside impartially or whenever his impartiality can reasonably be questioned. *Smith*, 357 S.W.3d at 341. The well-recognized rationale behind this rule is that "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *State v. Odom*, 336 S.W.3d 541, 575 (Tenn. 2011) (internal quotation omitted). However, not every alleged bias, partiality, or prejudice merits recusal. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "[A] judge is in no way disqualified merely because he has participated in other legal proceedings against the same person." *Harris*, 947 S.W.2d at 172 (citing *King v. State*, 391 S.W.2d 637, 642 (Tenn. 1965)). Neither adverse rulings by the judge nor opinions "based on actual observance of witnesses and evidence given during the [proceedings]" is sufficient to establish bias. *Alley*, 882 S.W.2d at 821. Similarly, "prior knowledge of facts about the case is not sufficient in and of itself to require disqualification." *Harris*, 947 S.W.2d at 172. "[P]rejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Alley*, 882 S.W.2d at 821 (internal quotation omitted). "However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Id.*

As an initial matter, we will not infer impartiality based on the judge's letter to Ms. Hall written well before any related Sixth Amendment claim had been raised. *See Kennath Henderson v. State*, No. W2003-01545-CCA-R3-PD, 2005 WL 1541855, at *28 (Tenn. Crim. App. Jun. 28, 2005) (refusing to infer impartiality based on a letter containing "clearly complimentary" statements with regard to trial counsel's performance written "well before any claim of ineffective assistance of counsel had been presented"), *perm. app. denied* (Tenn. Dec. 5, 2005). The letter simply indicated that the judge had reviewed the trial transcript in order to clarify any misconceptions on the part of the author of the editorial, not that he had prejudged Petitioner's Sixth Amendment claim with regard to the effect the number of breaks may have had on the jury. *See Paul Dennis Reid, Jr. v. State*, No. M2009-00128-CCA-R3-PD, 2011 WL 3444171, at *41 (Tenn. Crim. App. Aug. 8, 2011) (finding that the trial court's "comments about defense counsel's representation she made in denying the motion for new trial . . . were general in nature and in no way constituted a finding on counsel's performance under the *Strickland v. Washington* analysis," especially when the issue had not yet been raised), *aff'd sub*

*nom. Reid ex rel. Martiniano v. State*, 396 S.W.3d 478 (Tenn. 2013); *Thomas E. Montooth*, 1997 WL 381907, at *2 (refusing to infer impartiality based on "gratuitous" observations regarding the performance of counsel made during the sentencing hearing before any claim of ineffective assistance of counsel had been made). There is no indication in this case that the post-conviction judge would be impartial in determining the Sixth Amendment claim based on his response to the editorial.

As far as the judge's fairly active participation in the post-conviction hearing, there is nothing in the record to indicate that he did anything improper or that he formed an opinion on the merits on some basis other than what he learned from participation in the case. "Any comment made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." *Alley*, 882 S.W.2d at 822. Nothing said by the post-conviction court was directed specifically and personally at Petitioner or his counsel. The post-conviction court's questioning of Juror Hall and his warning that she could be charged with aggravated perjury if she lied under oath do not suggest that his impartiality might reasonably be questioned. "Unquestionably trial judges as human beings may often find themselves forming opinions as to the credibility of witnesses." *Kennath Henderson*, 2005 WL 1541855, at *27. In the post-conviction context, where the judge is the trier of fact, there is no concern that these statements may potentially prejudice a jury; therefore, recusal is not required. *Id.* (citing *Bowling v. Commonwealth*, 80 S.W.3d 405, 420 (Ky. 2002)).

Finally, while it is true that a "judge cannot both preside at a post-conviction proceeding and serve as a witness in that proceeding," *Harris*, 947 S.W.2d at 172 (citing Tenn. R. Evid. 605), we disagree that the post-conviction judge acted as a witness in this case or did anything to deny Petitioner a fair hearing on the Sixth Amendment issue. *Cf. Kennath Henderson*, 2005 WL 1541855, at *28 ("While we do not sanction the conduct of the post-conviction judge, especially his participation as a witness, we conclude that the judge's conduct did not diminish the overall fairness of the proceeding."). There was nothing improper about the judge consulting with the court reporter and taking judicial notice of the court's own records. *See State v. Lawson*, 291 S.W.3d 864, 869-70 (Tenn. 2009). The information the judge provided with regard to the number of breaks taken by the jury as well as what was said during voir dire and jury instructions could have been easily verified through either the testimony of the available witnesses or a review of the full trial transcript.[6] *See Harris*, 947 S.W.2d at 173 (finding no basis for recusal when "the judge was not a significant source of information at the hearing" and "other witnesses were available to address the factual issues"). However, as discussed further

---

[6] We note that, unlike in *Kennath Henderson*, Petitioner did not seek recusal of the post-conviction court on the ground that he would be needed as a necessary material witness. *See* 2005 WL 1541855, at *24.

- 14 -

below, Petitioner did not call trial counsel or any of the jurors besides Juror Hall to testify and did not cross-examine Juror Smith with regard to the supposed pressure placed on the jury by the trial judge. Moreover, the copy of the trial transcript that was entered into evidence was the same transcript that had been submitted to this Court on direct appeal and did not include those portions of the trial that would be relevant to Petitioner's present claim. Petitioner has not established that the post-conviction judge did anything that would "diminish the overall fairness of the proceeding" with regard to his Sixth Amendment claim. *See id.* Petitioner is not entitled to a new post-conviction hearing.

### III. Improper Influence on Jury

Under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, every criminal defendant has the right to a trial by an impartial jury. *State v. Adams*, 405 S.W.3d 641, 650 (Tenn. 2013) (citing *State v. Sexton*, 368 S.W.3d 371, 390 (Tenn. 2012)). "Jurors must render their verdict based only upon the evidence introduced at trial, weighing the evidence in light of their own experience and knowledge." *Id.* (citing *Caldararo ex rel. Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738, 743 (Tenn. Ct. App. 1990)). If the jury has been exposed to extraneous prejudicial information or subjected to an improper outside influence, the validity of the verdict is questionable and a new trial may be warranted. *Id.* (citing *State v. Blackwell*, 664 S.W.2d 686, 688 (Tenn. 1984)).

"A party challenging the validity of a verdict must produce admissible evidence to make an initial showing that the jury was exposed to extraneous prejudicial information or subjected to an improper outside influence." *Id.* at 651 (citing *Caldararo*, 794 S.W.2d at 740-41). Once such a showing has been made, "a rebuttable presumption of prejudice arises and the burden shifts to the State to introduce admissible evidence to explain the conduct or demonstrate that it was harmless." *Id.* (citing *Walsh v. State*, 166 S.W.3d 641, 647 (Tenn. 2005)). Whether the constitutional right to an impartial jury has been violated is a mixed question of law and fact which we review de novo, granting a presumption of correctness only to the trial court's findings of fact. *Id.* at 656 (citing *Fields*, 40 S.W.3d at 458).

"[A] defendant is entitled to a fair trial, not a perfect trial, and our ultimate inquiry is whether the jury that tried the case was actually fair and impartial." *State v. Leath*, 461 S.W.3d 73, 110-11 (Tenn. Crim. App. 2013) (internal quotation omitted). "It is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Thus, it would be unreasonable, and perhaps unwise, to expect juries to be completely sterilized and free of any external influences." *Caldararo*, 794 S.W.2d at 743-44 (citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). Thus, our courts have generally defined extraneous prejudicial information as information "coming from without," or more specifically as "information in the form of either fact or opinion that

was not admitted into evidence but nevertheless bears on a fact at issue in the case." *Adams*, 405 S.W.3d at 650 (citations omitted). Similarly, an improper outside influence has been defined as "any unauthorized private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury." *Id.* at 650-51 (internal quotation omitted). These categories "often overlap" and may be considered together. Neil P. Cohen, et al., *Tennessee Law of Evidence* § 6.06[6], at 6-54 (5th ed. 2005) (citing *Blackwell*, 664 S.W.2d at 688-89). However, Tennessee courts have drawn a "distinction between extrinsic and intrinsic influence" on the jury. *Caldararo*, 794 S.W.2d at 742. "External influences that could warrant a new trial if found to be prejudicial include: (1) exposure to news items about the trial, (2) consideration of facts not admitted in evidence, and (3) communications with non-jurors about the case." *Id.* (citations omitted). On the other hand, internal influences such as "(1) discussions among jurors, (2) intimidation or harassment of one juror by another, (3) a juror's personal experiences not directly related to the litigation, and (4) a juror's subjective thoughts, fears, and emotions" are not reason enough for a new trial. *Id.* (citations omitted).

Tennessee Rule of Evidence 606(b) provides clear guidance on the type of evidence that is admissible when challenging a jury's verdict:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

"The rule precludes inquiries into the jury's deliberative process while allowing juror testimony concerning objective incidents or events that constitute external or extraneous influences on the jury." *Caldararo*, 794 S.W.2d at 742. In other words, "a juror may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Walsh*, 166 S.W.3d at 649 (internal quotation omitted). The rationale behind this rule has been explained as follows:

[Rule] 606(b) represents a compromise between important public policies. It enables the courts to protect the litigants from verdicts tainted by extraneous prejudicial information or outside influence. At the same time, it recognizes the importance of the inviolate nature of a jury's deliberations . . . . Thus, it insures that jurors will not be guarded in their deliberations for fear of later scrutiny by others. It also prevents jurors whose views are in the minority from manipulating the system by repudiating the verdict and thereby requiring a new trial.

*Caldararo*, 794 S.W.2d at 741-42; *see also Carruthers v. State*, 145 S.W.3d 85, 92-93 (Tenn. Crim. App. 2003) (noting that the public policy considerations behind Rule 606(b) "include the prevention of jury harassment, encouragement of free and open jury deliberation, promotion of finality of verdicts, and the reduction of the incentive for jury tampering").

As an initial matter, Petitioner has failed to produce any admissible or credible evidence to make the initial showing that the jury was exposed to extraneous prejudicial information or subjected to an improper outside influence.[7] *See Adams*, 405 S.W.3d at 651. Juror Hall's entire testimony with regard to her thought process during deliberations —including her impression that she was annoying the other jurors with her reluctance, her feeling of hopelessness in changing the other jurors' minds, her misunderstanding of the trial court's instructions, and her desire to terminate her duties so that she could get home to feed someone else's pets—was inadmissible under Rule 606(b). *See Walsh*, 166 S.W.3d at 647 ("[A] juror is not permitted to testify about anything occurring during deliberations, including the juror's own internal thoughts, motivations, or emotions."); *State v. Clayton*, 131 S.W.3d 475, 480 (Tenn. Crim. App. 2003) (jurors' testimony that they changed their verdict because the foreman told them that the judge would be "upset" if the verdict was not unanimous was inadmissible under Rule 606(b)). The editorial written by Ms. Hall and her testimony with regard to what her daughter told her about feeling pressured to reach a verdict are not only "rank hearsay" as found by the post-conviction court, they are also inadmissible as an end-run around Rule 606(b). *See* Tenn. R. Evid. 801(c) (defining hearsay); *id.* at 802 (making hearsay inadmissible); *id.* at 606(b)

_____

[7] The State acknowledged in its appellate brief that it did not object to the admissibility of any of Petitioner's evidence. Generally, "[w]hen a party does not object to the admissibility of evidence, . . . the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary." *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000). However, from our reading of *Walsh*, the Tennessee Supreme Court analyzed the admissibility under Rule 606(b) of the State's cross-examination into the effect of an improper influence on a juror's deliberation, even though it appears that the petitioner did not object during the hearing. *See* 166 S.W.3d at 644-45. Because of the importance of "protect[ing] the integrity of the jury's deliberative process," *id.* at 646, we feel compelled to note that much of Petitioner's evidence should not have been admissible. Regardless, our ultimate conclusion that Petitioner failed to establish an improper outside influence on the jury would be the same based on the post-conviction court's credibility determinations.

("evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying [may not] be received for these purposes").

The only admissible evidence under Rule 606(b) with regard to allegedly extraneous prejudicial information or improper outside influence was Juror Hall's testimony that the trial judge told the jury that the trial had to be completed in a single day and that he did not give them the option to resume deliberations in the morning.[8] *See Walsh*, 166 S.W.3d at 649 (holding that a juror may testify to the objective fact of an improper influence but not its subjective effect). However, the post-conviction court found that Juror Hall's testimony that any of this even happened was "entitled to no credibility." As stated above, this Court will not second-guess the post-conviction court's credibility determinations. *See Fields*, 40 S.W.3d at 456. Further, Juror Hall's testimony is not supported by the record. Petitioner did not attempt to bolster Juror Hall's testimony that this occurred by questioning Juror Smith, any of the other subpoenaed jurors, or trial counsel as to whether these statements were made by the trial judge. Moreover, the trial transcript that was entered into evidence does not contain anything said during either the pre-trial jury selection or the post-trial jury instructions, even though these portions were presumably available to be transcribed based on the judge's consultation with the court reporter. Petitioner carries the burden of proving his factual allegations in the post-conviction court by clear and convincing evidence, and he failed to do so in this case. *See* T.C.A. § 40-30-110(f); *Momon*, 18 S.W.3d at 156.

Even assuming the trial court did say that the case had to be completed in a single day,[9] a judge instructing a jury in open court is neither extraneous nor improper. Such statements, if they indeed were made, are neither unauthorized private communication with a juror nor do they bear directly on a fact at issue in the case. *See Adams*, 405 S.W.3d at 650. The allegations in this case are clearly distinguishable from cases in which jurors communicated with court officers, dismissed alternate jurors, or the judge outside the courtroom, off the record, and after deliberations had commenced. *See id.* at 649 (note left by discharged alternate juror in jury foreman's hotel room expressing belief in defendant's guilt); *Walsh*, 166 S.W.3d at 644 (court officer telling jury during

---

[8] On appeal, Petitioner has abandoned his original claim that the jury was not given sufficient breaks throughout the course of the trial, as was claimed in the editorial. *See Ronnie Jackson, Jr.*, 2009 WL 3430151, at *6 n.2 (noting that issues raised in the lower court but not raised on appeal are deemed abandoned).

[9] Any potential argument that the late-night court session in this case violated the rule set out in *State v. Parton*, 817 S.W.2d 28, 34 (Tenn. Crim. App. 1991) ("If the requisite unusual circumstances do exist and late[-]night sessions are scheduled because of necessity, good practice would be to also let the record affirmatively reflect that all counsel and all jurors expressly agree."), would be waived for failure to address it on direct appeal. *See* T.C.A. § 40-30-106(g) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented. . .").

deliberations that they had to reach a unanimous verdict); *State v. Nicholas Wyatt Barish*, No. E2012-01353-CCA-R3-CD, 2013 WL 5436909, at \*12 (Tenn. Crim. App. Sept. 27, 2013) (trial judge's ex parte rejection of the jury's initial verdict as illegal without further explanation), *perm. app. denied* (Tenn. Mar. 5, 2014); *State v. Parchman*, 973 S.W.2d 607, 612 (Tenn. Crim. App. 1997) (one juror asking the bailiff about reaching a unanimous verdict), *abrogated by Walsh*, 166 S.W.3d at 648. Petitioner has pointed us to no case holding that statements made by the judge from the bench in open court constitute extraneous prejudicial information or an improper outside influence justifying a new trial, and we see no reason to so hold in this case.

Moreover, Juror Hall testified that she truthfully confirmed that the verdict read reflected her individual verdict when polled by the trial court and that she would have reached the same verdict regardless of any supposed pressure applied by the judge. Petitioner cannot now use Juror Hall's after-the-fact claim of lingering doubts to sandbag an otherwise valid verdict. *See Montgomery v. State*, 556 S.W.2d 559, 561 (Tenn. Crim. App. 1977). Rule 606(b) is in place to prevent just this sort of meddling with a jury's deliberation and ultimate verdict. *See Caldararo*, 794 S.W.2d at 741-42. Petitioner did not establish an improper outside influence which would raise a presumption of prejudice; thus, the burden never shifted to the State to rebut such a presumption. *Adams*, 405 S.W.3d at 651. Petitioner is not entitled to relief.

*Conclusion*

We hold that the post-conviction court did not err in failing to recuse himself and that the Petitioner did not present any admissible, credible evidence of extraneous prejudicial information or an improper outside influence which compromised his constitutional right to an impartial jury. Therefore, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE